CHRISTOPHER L. GRASSO, ESQ.
State Bar Number 13689
**CHRISTOPHER L. GRASSO P.C.**
411 S. 6th Street
Las Vegas, Nevada 89101
T: (702) 302-4449
F: (702) 868-5778
E: chris@chrisgrassolaw.com
Attorney for WALLACE

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>JEANETTE WALLACE,  )<br>)<br>Defendant.  )<br>_____ ) | Case No.: 2:20-cr-00289-RFB-VCF<br><br>**SENTENCING MEMORANDUM** |

*Certification:* This Sentencing Memorandum is timely filed 10 days before Sentencing

The defendant, JEANETTE WALLACE (WALLACE), through her attorney of record, Christopher L. Grasso, submits this Sentencing Memorandum for the Court's consideration in fashioning a sentence pursuant to 18 U.S.C. 3353(a) which is "sufficient, but not greater than necessary" to meet sentencing goals.

DATED this 4th day of February 2022.

*/s/ Christopher L. Grasso*
**CHRISTOPER L. GRASSO, ESQ.**
Nevada State Bar Number 13689
411 South 6th Street
Las Vegas, NV  89101
T: (702) 302-4449
F: (702) 868-5778
Attorney for WALLACE

## **STATEMENT OF THE CASE**

THE CHARGES

On August 6th, 2020, a single-count Criminal Complaint was filed in the United States District Court, District of Nevada, Las Vegas, charging WALLACE with Depredation Against Property of the United States and Aiding and Abetting, in violation of 18 U.S.C. § 1361 and 18 U.S.C. § 2, which occurred on or about May 30, 2020. On October 21, 2020, a single-count Criminal Indictment was filed against WALLACE mirroring the above-listed complaint. On November 3, 2021, WALLACE appeared before the Honorable Richard F. Boulware, II, United States District Judge, and pleaded guilty to Count One as outlined in the Criminal Indictment.

The essential facts of the case surround a recent and important moment in American history, the racially focused protests occurring in part within Las Vegas on or about May 30, 2020. It is also worth noting that these events occurred arguably at the height of the panic of the current global pandemic. On May 25, 2020, George Floyd, a black man, lost his life during an arrest at the hands of a white police officer, Derek Chauvin. Chauvin was later found guilty of second-degree unintentional murder, third-degree murder, and second-degree manslaughter. The killing of Mr. Floyd sparked protests for racial justice across the nation. The protests in Las Vegas Nevada lasted approximately three days. The skirmish between protestors and police resulted in an unknown number of arrests, but at least eighty arrests occurred on May 29, 2020. Protesters were witnessed throwing water bottles and rocks at police, and at least twelve police officers were injured. On May 30, 2020, the protests continued with more intense fervor. An initial peaceful protest where approximately 2,000 people gathered in Downtown Las Vegas became a battleground of tear gas, Molotov cocktails and widespread looting and vandalism. An unknown number of

arrests were made on May 30, 2020. More protests and rioting occurred on May 31, where at least 24 businesses in downtown Las Vegas were vandalized and tear gas had to again be used on the unruly crowd. Protests related to the death of George Floyd, both around the nation and the entire world, eventually led to a series of executive orders by President Biden that were focused on racial inequity.

On May 30, 2020 WALLACE was one of the thousands who participated in the protests that became riots, ending up in front of the Foley Federal Building on Las Vegas Boulevard. WALLACE can be seen via video surveillance joining a crowd of an unknown number of individuals who began to express their frustration through physical attacks upon the Foley Federal Building. Around 22:14 on May 30, 2020, the assault on the Foley building entrance area began, sparked by one of the members of the until then tepid crowd throwing paint onto one of the windows. From there, individuals began to approach the glass of the entrance more closely, holding "Black Lives Matter" signs and joining in by throwing objects, destroying the building's signage, and even physically punching and kicking the entranceway area, eventually resulting in some of the damage for which restitution is sought in this matter. WALLACE was one of the identified individuals seen kicking the building and throwing what appeared to be rock and a can of paint that was left by an unknown person near the entrance of the building.

GUILTY PLEA AGREEMENT

In the instant matter, the Government and the Defendant have agreed on the following terms: WALLACE has entered a plea to Count 1, Depredation Against Property of the United States and Aiding and Abetting, in violation of 18 U.S.C. § 1361 and 18 U.S.C. § 2. The Guilty Plea Agreement contemplates a base offense level of 6. An additional 6 points are added due to the nature of the plea contemplating a total damage greater

$40,000 and assigning that collective damage to WALLACE. With a two-level reduction for acceptance of responsibility, the adjusted offense level is 10. Applying a criminal history category of II, the sentencing range contemplated in the Guilty Plea Agreement is 8 to 14 months.

The Government will argue for a sentence within the guidelines range. The Government has agreed that WALLACE may argue for a downward variance pursuant to 18 U.S.C. §3553(a).

THE PRESENCE REPORT

The Sentencing Recommendation

> In Section G of the PSR, in his own words, and in relevance to the instant defense argument:
>
> "118. Wallace did not have her father's complete support as she grew up. However, she had and continues to have the support of her mother and grandmother. The defendant has a history of marijuana use, which she needs to address. Wallace appears to have taken on the role of a caretaker for her younger brother. To the defendant's credit, she has taken responsibility for her instant offense behavior.
>
> …
>
> 121. The term of supervised release is recommended with special conditions for Substance Abuse, Drug Testing, Mental Health Treatment, Financial Disclosure, Debt Obligation, and Search and Seizure. Conditions requiring substance abuse treatment, drug testing, mental health treatment, and financial obligations enable the probation officer to satisfy the statutory requirements to keep informed of the conduct and condition of the defendant, report the defendant's conduct and condition to the sentencing court, and aid the defendant and bring about improvements in his conduct and condition. 18 U.S.C. §§ 3603(2)-(3). Substance abuse treatment may promote positive change in the defendant and reduce the probability of recidivism by targeting known predictors of crime that can be changed. Drug testing may deter the defendant from possessing illegal drugs by making her aware that unlawful possession can be discovered at any time through drug testing and protect the public by enhancing the ability of the probation officer to detect unlawful substances. The financial disclosure and prohibitions against incurring new credit may help the probation officer

set the appropriate collection parameters for monetary conditions, deter, and detect economic crimes, verify and monitor self-employment, or assist disorganized, impulsive defendants to gain control of their financial situation. The search and seizure condition may also permit a probation officer to intervene quickly when reasonable suspicion exists that the defendant has engaged in criminal conduct or otherwise violated a condition of supervision."

This section of the PSR accurately depicts significant reasons why this Court should consider WALLACE for a downward variance. The defense will address these factors at the end of its arguments below.

**ARGUMENT**

In the watershed case United States v. Booker, 523 U.S. 220 (2005) the Supreme Court of the United States declared that the Federal Sentencing Guidelines, which had previously been of a mandatory nature when applied to sentencing, were instead "effectively advisory." While no longer bound to apply the Guidelines, a sentencing court must still "consult the Guidelines and take them into account when sentencing." Id at 264. Booker paved the way for sentences to be imposed outside the Guidelines range pursuant to 18 U.S.C. § 3553(a).

A sentencing court must look to the factors of 18 U.S.C. § 3553(a), which states that the "court shall impose a sentence sufficient, but not greater than necessary" to achieve the newly-focused sentencing goals. These goals establish that the sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(A)-(D).

Further, § 3553(a) provides that the district court should weigh factors such as the "nature and circumstances of the offense and the history and characteristics of the

defendant;" "the kinds of sentences available;" "the [applicable] sentencing range[;]" the articulated policy goals of the guidelines; "the need to avoid unwarranted sentence disparities" among similar defendants; and "the need to provide restitution to any victims of the offense." § 3553(a)(1).

THE DEFENDANT

Ms. Wallace is a twenty-six-year-old young woman who on May 30, 2020, was swept up into the fervor of a pandemic-fueled, racially motivated protest that became violent. Following the death of George Floyd, protests were sparked both across the United States and all over the world. People from all over the world had chosen to risk their health in a new emerging pandemic to express their discontent at the current state of race-based oppression and the role American law enforcement plays in worsening racial injustice. Wallace was one of those people, choosing to join the protests in Downtown Las Vegas on May 30, 2020.

From the perspective of the type of "guilty mind" required for the instant offense within the circumstances, these facts are somewhat atypical in that the group and even national or global dynamics of that time and place bore significant effect upon the actions of WALLACE. Although WALLACE is before this Court to accept responsibility for her actions, from a sentencing perspective, it should be recognized that but for the exigent circumstances outlined above, WALLACE would never have chosen to attack the outside of the Foley Federal Building. In other words, human volition is impacted by large groups, and the larger the group the more difficult it is to behave, act and think on one's own. In the instant matter, WALLACE took part in a moment in history, being swept up into the unruly rage of a crowd that was battling in the streets with police. The events were broadcast all

over the world, and millions of online viewers watched what could be described as a battle in the streets.

These protests were totally unplanned, in that it was more of an organic gathering of the public rather than a planned assault on government property by a group of adversaries to the nation or national property, such as the January 6th insurrection. Arial videos of the scene depict seas of protestors filling the streets around Downtown Las Vegas. Within Las Vegas Boulevard, which lies between the Federal Courthouse and the Foley Federal Building, security footage provided in discovery depicts hundreds of people gathered in the middle of the street and on the steps of both buildings. Part of that video also depicts a large fire being lit in the street by an unknown number of protestors. Another part of the video zooms in on the protestors directly on the steps of the Foley Building, depicting at least about one hundred individuals gathered, holding signs, throwing objects, and collectively damaging government property while other onlookers recorded with cameras and cell phones. It is worth noting that in the offense description within the PSR, the facts suggest "multiple individuals" began an assault upon the building, but such wording can curb the reality that May 30, 2020 involved the chaos of hundreds of protestors on this particular street, with at least dozens of protestors engaging with the immediate vicinity of the entrance of the Foley Building. It is also worth noting that most if not many individuals appear to be wearing masks that likely prevented their true identification and thus eventual arrest. WALLACE acted as one of these essentially innumerable actors, although she was clearly identified without a mask. WALLACE was one of thousands of protestors but was swept up by the energy of the event in a manner that caused the actions for which she is accepting responsibility.

Specifically, WALLACE is seen on video throwing what appeared to be rock at the windows three separate times. She is also seen throwing what appeared to be a paint can at the windows and kicking the window by the revolving doors. This young woman has paid penance through her restitution amount of $6,000, although the instant agreement contemplates that the actual, probable, or intended loss attributable to the defendant is $71,335.72.

WALLACE is a young woman who is attempting to carve out her own path in life. Although she is supported by her mother and grandmother, it is clear WALLACE has had some trauma in her past. Not only did she not have her father in her life, but she also witnessed and was a victim to physical violence by her sibling's father. Despite this, WALLACE has taken it upon herself, for example, to obtain custody as the primary caregiver for a member of her family, her little brother Tyzhier. Before the commission of the instant offense, she was aiming to obtain her real estate license and own and operate an online boutique store. To her credit, she has pursued various paths of education, including a Degree of Associate Technology from Soluto University. Further, WALLACE has generally maintained her employment status despite the pressures of the pandemic and the instant offense.

The PSR in-part recommends specific a rehabilitation or treatment regimen within a term of supervised release. Undersigned counsel now suggests this is an appropriate sentence for WALLACE considering the totality of the circumstances, a time served sentence followed by a term of supervised release with added conditions. A sentence can be fashioned that will ensure she will pay for her actions through the felony conviction and significant restitution, but with self-empowering rehabilitative tasks that will help ensure she finds future success for herself, her little brother, her family, and community.

## **CONCLUSION**

The calculations contained in the PSR puts WALLACE at a sentencing range of 8 to 14 months within a criminal history category of II. The defense submits that WALLACE is a good candidate for a non-incarcerative sentence, whether probationary or a time served sentence followed by supervised release. Such a sentence is available to the Court and would recognize the level and severity of WALLACE's involvement and her efforts to achieve payment of restitution. Further, such a sentence would best reflect §3553(a)'s directive that a sentence must be "sufficient but not greater than necessary" to achieve sentencing goals.

DATED this 4th day of February 2022.

*/s/ Christopher L. Grasso*
**CHRISTOPER L. GRASSO, ESQ.**
Nevada State Bar Number 13689
411 South 6th Street
Las Vegas, NV  89101
T: (702) 302-4449
F: (702) 868-5778
Attorney for WALLACE

9

# **CERTIFICATE OF SERVICE**

The undersigned hereby certifies and affirms that he is an employee of Christopher L. Grasso, P.C., and is a person of such age and discretion as to be competent to serve papers. That on February 4, 2022, I served the foregoing document and all attachments on the parties identified below by electronic service (ECF).

Christopher Chiou, Esq.
United States Attorney's Office
District of Nevada
Kimberly Sokolich
Assistant U.S. Attorney
501 Las Vegas Blvd. South
Suite 1100
Las Vegas, Nevada 89101
Kimberly.Sokolich@usdoj.gov

*/s/ Tannia Garcia*
An Employee of
**CHRISTOPHER L. GRASSO, P.C.**